# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

MIKE S.,[1]

       Plaintiff,

  v.

**NANCY A. BERRYHILL,** Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

      Defendant.

Case No. 3:17-cv-00692-SI

**OPINION AND ORDER**

Richard F. McGinty, MCGINTY & BELCHER, P.O. Box 12806, Salem, OR 97301. Of Attorneys
for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Mike S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). AR 499. For the reasons discussed below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed for SSI on April 27, 2011. In his initial claim, Plaintiff alleged

a disability onset date of November 15, 2007. AR 46. At his original hearing before an

Administrative Law Judge ("ALJ"), Plaintiff amended his alleged onset date to April 27, 2011.

AR 502. Plaintiff alleged disability due to a herniated disc in his lower back, hip dysplasia, right

wrist arthritis, hernias, vascular disorder in his legs, restless leg syndrome, learning disability,

and depression. AR 46. Plaintiff was born October 5, 1970, and is currently 48 years old. *Id.*

Plaintiff was 40 years old as of the disability onset date. Plaintiff's claim was denied

initially on September 1, 2011, and upon reconsideration on December 29, 2011. Plaintiff's first

hearing before an ALJ occurred on February 6, 2013. AR 24. On February 22, 2013, ALJ John

Bauer found Plaintiff not disabled and not entitled to SSI under the Social Security Act. AR 20.

Plaintiff then appealed ALJ Bauer's decision to the Appeals Council and submitted new

evidence, including an assessment by Dr. David Freed, Ph.D. and treatment notes from

Northwest Human Services. AR 4. Despite this new evidence, the Appeals Council denied

Plaintiff's request for review on May 22, 2014. AR 1. Plaintiff subsequently filed a complaint in

district court on July 18, 2014, seeking judicial review of the Commissioner's final decision

denying his application for SSI.

The Court reversed the decision of ALJ Bauer. [*Mike S.*] *v. Colvin*, 2015 WL 4994195,

at *5 (D. Or. Aug. 19, 2015). The Court remanded for additional findings to (1) consider the

assessment of Dr. Freed and (2) resolve a conflict between ALJ Bauer's assessment of Plaintiff's

residual functional capacity ("RFC") and the recommendations of two nonexamining psychologists. *Id.*

Plaintiff received a second hearing on September 15, 2016, before Administrative Law Judge Gene Duncan (the "ALJ"). AR 502. On January 30, 2017, the ALJ issued a decision that again found Plaintiff not disabled and not entitled to SSI. AR 516. Plaintiff subsequently requested review of the ALJ's decision, which is the final decision of the Commissioner.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within t he meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ found Plaintiff had not participated in gainful activity since April 27, 2011. AR 504. At step two, the ALJ found the following severe medical impairments, which more than minimally affect Plaintiff's ability to work: degenerative joint and disc disease of the cervical, thoracic, and lumbar spine; right wrist osteoarthritis; congenital hip dysplasia; missing index finger from the non-dominant left hand; learning disorder; and depressive disorder, not otherwise specified. AR 505. The ALJ also noted that Plaintiff had been evaluated for other symptoms and complaints, some of which included: sleep apnea; small inguinal hernia; hepatitis C; asthma; and restless leg syndrome. *Id.* The ALJ concluded that these conditions did not constitute severe impairments. *Id.*

At step three, the ALJ found that Plaintiff does not have any impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ then evaluated Plaintiff's RFC, considering both the evidence available in Plaintiff's first hearing and the additional evidence submitted to the Appeals Council. The ALJ revised the RFC finding from the first hearing, and found that Plaintiff had an RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) subject to the following limitations. He can perform simple, routine, and learned tasks. He can occasionally push or pull with the right upper extremity. He can occasionally make postural movements. He can

perform work that does not require him to climb ladders or work at heights. He can perform work that avoids concentrated exposure to pulmonary irritants. He can frequently grasp, handle, fine finger, and feel. He can frequently balance, kneel, or climb ramps or stairs. He can perform work that avoids walking on uneven surfaces.

AR 507.

At step four, the ALJ considered Plaintiff's RFC, testimony from the vocational expert ("VE"), and the mental and physical demands of Plaintiff's past relevant work as a floor covering installer. AR 515. The ALJ concluded that Plaintiff's RFC precluded performance of Plaintiff's past relevant work. *Id.*

At step five, the ALJ considered Plaintiff's RFC, age, education, work experience, and the VE's testimony to determine that jobs exist in significant numbers in the national economy that Plaintiff could perform. AR 516. These jobs included work as an addressor, nut sorter, and document preparer. *Id.* Accordingly, the ALJ found that Plaintiff is "not disabled." *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in the following general aspects of his decision: (A) improperly evaluating the opinions of multiple doctors and a licensed clinical social worker and failing to develop fully the administrative record; (B) failing to identify and resolve inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); (C) improperly discrediting Plaintiff's subjective symptom testimony; and (D) improperly discrediting lay witness testimony.

## A. ALJ's Evaluation of Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating

physicians, examining physicians, and nonexamining physicians. *Garrison v. Colvin*, 759

F.3d 995, 1012 (9th Cir. 2014). Generally, "[A] treating physician's opinion carries more weight

than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ

must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an

examining physician is contradicted by another physician's opinion, the ALJ must provide

"specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v.

Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### 1. Drs. Lundblad and Boyd

Plaintiff first contends that the ALJ erred in discounting the finding of nonexamining state

agency psychologists, Drs. Sandra Lundblad and Joshua Boyd, that Plaintiff could complete only

one-to-two-step tasks. Specifically, Plaintiff believes that the ALJ rejected the finding of

Drs. Lundblad and Boyd for two reasons: (1) they did not personally examine Plaintiff, and

(2) they did not have access to records available at the hearing level. Plaintiff argues that these

two reasons are insufficient.

As an initial matter, the fact that Drs. Lundblad and Boyd did not personally examine

Plaintiff serves to classify them as nonexamining medical sources, and this fact alone would be

an insufficient basis to discredit their testimony. *See Andrews*, 53 F.3d at 1041 (noting that

examining physicians are entitled to more weight, but this "does not mean that the opinions of

nonexamining sources and medical advisors are entitled to *no* weight." (emphasis in original)).

Likewise, the fact that a physician viewed only part of the record is not a reason, without more,

to discount a physician's opinion. *See id.* at 1042 ("[R]eports of the nonexamining

[physician] . . . may serve as substantial evidence when they are supported by other evidence in

the record and are consistent with it."). Thus, Plaintiff's arguments have merit, as far they go, but Plaintiff fails to challenge the ALJ's several other reasons to reject the one-to-two-step limitation. As explained below, these reasons provide substantial evidence to reject the one-to-two-step limitation.

Because the one-to-two-step limitation conflicts with the opinion of examining expert Dr. Ben Kessler, AR 212, the ALJ needed to provide only specific, legitimate reasons to reject Drs. Lundblad and Boyd's opinion. *See Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints; inconsistency with medical records; inconsistency with a claimant's testimony; inconsistency with a claimant's daily activities; or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

First, the ALJ referenced Dr. Kessler's finding that Plaintiff's "[m]emory presented as generally good for both recent and remote events. Concentration presented as good while insight and judgment both presented as good." AR 207. Dr. Kessler's objective testing for memory, attention, and vigilance also did not show substantial impairment. *Id.* Second, the ALJ referenced specific clinical findings and medical records that were contrary to the one-to-two-step limitation. Although some of the cited records have limited probative value, other medical records support the ALJ's finding.[2] *See, e.g.*, AR 215 (noting that Plaintiff did not report "difficulty concentrating and psychiatric symptoms"); AR 377 (noting that Plaintiff had "normal attention span and concentration"); AR 226 (noting that Plaintiff was "[a]ble to maintain

---

[2] Although a court is not permitted to affirm the Commissioner on grounds upon which the Commissioner did not rely, a court is nevertheless permitted to consider additional evidence supporting the grounds provided by the ALJ. *See Warren v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

conversation and answer questions appropriately"). The ALJ's reference to conflicting reports from an examining psychologist and other medical evidence in the record provide specific, legitimate reasons to discount the one-to-two-step limitation.

As a final note, the ALJ was required on remand to "resolve the conflict between the ALJ's assessment of Plaintiff's RFC and the opinions of Drs. Lundblad and Boyd." [*Mike S.*], 2015 WL 4994195, at *5. In ALJ Bauer's decision, he assigned "significant" weight to the opinions of Drs. Lundblad and Boyd, but offered no reasoning for his failure to include the one-to-two-step limitation in his RFC finding. AR 18. Here, the ALJ gave the same opinions "some" weight, and provided specific, legitimate reasons to discount the one-to-two-step limitation. The ALJ satisfied his obligations on remand.

### 2. Dr. Freed

Plaintiff next contends that the ALJ erred by rejecting, without substantial evidence, the opinion of Dr. David Freed, Ph.D. Dr. Freed examined Plaintiff on January 23, 2013, after referral from Plaintiff's counsel. AR 473. Dr. Freed administered objective tests and diagnosed Plaintiff with a range of psychological disorders and limitations. AR 478. Finally, Dr. Freed completed a "check-the-box" functional assessment that Plaintiff's counsel had created and provided. AR 481-82. The ALJ rejected the opinion of Dr. Freed because his opinion was inconsistent with IQ testing in the record, Plaintiff's good performance on Dr. Freed's mental status evaluation, Plaintiff's activities of daily living, and because Plaintiff's counsel paid for Dr. Freed's assessment in the course of generating support for Plaintiff's SSI application.

A threshold question in evaluating whether the ALJ properly rejected Dr. Freed's opinion is whether Dr. Freed's opinion is contradicted, and thus whether the ALJ's reasons for rejecting it must be "clear and convincing" or "specific, legitimate reasons." *Lester*, 81 F.3d at 830. Plaintiff provides no specific argument on this point. The Commissioner argues that Dr. Freed's

opinion was contradicted by other opinions in the record, and thus contends that the ALJ's reasoning must meet the "specific and legitimate" standard.

Although the ALJ did not expressly find that another opinion contradicted Dr. Freed's opinion, inferences from the record show inconsistences between the opinions of Drs. Freed and Kessler. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (using the record to determine inconsistency between medical evidence, despite lack of express finding by ALJ). For example, Dr. Kessler noted that Plaintiff's "[c]oncentration presented as good while insight and judgment both presented as good" and his "[m]emory presented as good for both recent and remote events." AR 207. Dr. Freed, however, concluded that Plaintiff had "moderate" limitation, meaning "noticeable difficulty . . . up 20 percent of the day," with attention, concentration, and remembering short, simple instructions. AR 481. Likewise, Dr. Kessler found that Plaintiff had normal visuospatial/executive function, AR 207, while Dr. Freed found that Plaintiff "struggled" and showed "abnormal" results on similar tests. AR 477. Together, these results show inconsistences between the opinions of Drs. Kessler and Freed, in turn requiring the ALJ to provide specific, legitimate reasons supported by substantial evidence to reject Dr. Freed's opinion.

### a.   Medical Opinion Inconsistent with Mental Status Exam

The ALJ first reasoned that the degree of limitation found in Dr. Freed's opinion was inconsistent with Plaintiff's high score on Dr. Freed's mental status exam. An ALJ may properly reject a physician's opinion because of its internal inconsistences. *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (noting that physician "repeatedly reported [the claimant] was unemployable while acknowledging he continued to work full time").

As the Commissioner argues, the ALJ found a similar inconsistency here: Plaintiff's near-perfect score on Dr. Freed's mental status exam suggests a high level of functioning, but Dr. Freed nonetheless found that Plaintiff had significant functional limitations. In response, Plaintiff appears to question the existence of any inconsistency in Dr. Freed's findings. Specifically, Plaintiff appears to argue that a mental status exam evaluates the patient using many metrics. These range from appearance to alertness. Although not clearly stated, Plaintiff suggests the inference that Plaintiff could have scored highly overall on the mental status exam while still scoring poorly on sections of the exam related to Plaintiff's functioning in the workplace—thus resolving the inconsistency that the ALJ noted as grounds to discredit Dr. Freed.

Plaintiff's argument seems unlikely, as Plaintiff only missed one point on Dr. Freed's mental status exam. Even if Plaintiff is correct, then the precise meaning of Plaintiff's mental status score is at most ambiguous. The one ultimately responsible for resolving such ambiguities in medical testimony is the ALJ. *Garrison*, 759 F.3d at 1009. When, as here, the evidence could support more than one rational interpretation, the Court is bound to uphold the ALJ's interpretation. *Batson*, 359 F.3d at 1196. Accordingly, the ALJ's finding that Dr. Freed's opinion contained internal inconsistences is affirmed, and provides a specific, legitimate reason to discount Dr. Freed's opinion.

### b. Medical Opinion Inconsistent with IQ Scores in the Record

As a second reason to reject Dr. Freed's report, the ALJ also noted the inconsistency between Dr. Freed's assessment of Plaintiff's functional limitations and IQ scores in the record. Inconsistency with the medical record may factor into an ALJ's decision to reject an examining physician's opinion. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602-03 (9th Cir. 1999). The ALJ noted that a 2008 IQ test, which Dr. Kessler referenced in his opinion,

showed that Plaintiff had an overall IQ of 91. AR 211. Dr. Freed found that Plaintiff had an overall IQ of 73. AR 476. The ALJ rejected Dr. Freed's IQ score because it was inconsistent with Plaintiff's high score (29 out of 30) on Dr. Freed's mental status exam, and credited the older IQ score of 91. AR 514. The ALJ then found that Dr. Freed's assessment of Plaintiff's limitations was inconsistent with an IQ score of 91. AR 514. As noted above, "The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [physicians] falls within this responsibility." *Morgan*, 169 F.3d at 603 (citations omitted). The ALJ found that Dr. Freed's opinion of Plaintiff's functioning did not match objective IQ testing in the record, and such an inconsistency is also a specific, legitimate reason to reject Dr. Freed's contradicted medical opinion.

### c. Referral by Plaintiff's Counsel

The ALJ noted that Plaintiff's counsel referred Plaintiff to Dr. Freed and paid for the examination. It is unclear whether the ALJ relied on these facts as a reason to discredit Dr. Freed's opinion, but the ALJ's decision implied that the facts had probative value. Plaintiff argues that the ALJ erred in considering them.

"[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Despite this, "Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could . . . form a legitimate basis for evaluating the reliability of the report." *Id.* Thus, although this reason given by the ALJ is not specific or legitimate, the ALJ provided other specific, legitimate reasons to discredit the opinion of Dr. Freed, as explained above.

### d. Limitation Inconsistent with Plaintiff's Daily Living Activities

Finally, the ALJ discredited Dr. Freed's opinion because the ALJ found that the degree of functional limitation in the opinion was inconsistent with Plaintiff's activities of daily living. Plaintiff contends that the ALJ failed to set out specific findings to show how Plaintiff's daily living activities are inconsistent with Dr. Freed's opinion.

Inconsistency between a medical opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2008); *Morgan*, 169 F.3d at 600-02. The ALJ, however, must still provide substantial supporting evidence, including "a detailed and thorough summary of the facts." *Reddick*, 157 F.3d at 725. The ALJ found that Dr. Freed's opined limitations were inconsistent with Plaintiff's daily activities, including child care and household activities. AR 514. The ALJ provided no specific facts showing the kind of child care Plaintiff provides or the complexity of Plaintiff's household activities. Without reference to more specific facts in the record, the ALJ failed to provide substantial evidence.

Having determined that the ALJ erred, the court must still determine whether the error is harmless. Where an ALJ gives multiple valid reasons to discount a contradicted medical opinion, the invalidity of an additional reason is "harmless and does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197. As in *Batson*, the here ALJ identified specific, legitimate reasons to reject the opinion of Dr. Freed. The lack of substantial evidence regarding Plaintiff's daily activities, as they relate to Dr. Freed's opinion, does not invalidate the ALJ's overall conclusion.

### 3. Dr. Markus

Dr. Brandon Markus, D.O., evaluated Plaintiff on August 13, 2011. AR 200. Plaintiff contends that the ALJ erred in his treatment of Dr. Markus's opinion as follows: (1) the ALJ

failed to develop the record after Dr. Markus noted that a more recent MRI would be helpful; and (2) the ALJ erred in rejecting Dr. Markus's opinion that Plaintiff could only "occasionally" finger objects.

### a. ALJ duty to develop the record

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *see also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). Nevertheless, "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Plaintiff argues that the ALJ's duty to develop the record was triggered when Dr. Markus opined on Plaintiff's back pain and noted that "[i]t would be helpful to have more up-to-date imaging. On physical examination, it is somewhat difficult to fully assess." AR 205. Plaintiff argues that Dr. Markus' remark renders his opinion on Plaintiff's back pain conditional. Thus, the question is whether Dr. Markus' comment created an ambiguity that obligated the ALJ to develop the record.

*Tonapetyan* is instructive on this issue. In that case, the ALJ relied heavily on the testimony of a nonexamining psychological expert. This expert described the sparse record as "confusing" and found it "difficult to say" whether the record was complete enough for the ALJ to make a decision. *Tonapetyan*, 242 F.3d at 1150. The expert resisted offering any diagnosis, and gave one "[o]nly when pressed by the ALJ for a diagnosis 'based upon what's in the record.'" *Id.* The expert remained equivocal throughout his testimony. *Id.* In the face of this ambiguity, the court held that the ALJ erred in failing to develop the record. *Id.* at 1151.

Unlike the expert in *Tonapetyan*, Dr. Markus reached a clear diagnosis based on the record. Further, Dr. Markus's opinion was ambiguous about the need for additional imagery. Although Dr. Markus noted that updated imaging would be "helpful," he stated that the lack of recent imaging only made it "*somewhat* difficult to *fully* assess." AR 205 (emphasis added). Plaintiff identifies no other instance where Dr. Markus's opinion requested additional records, and the Court can find none. Thus, while Dr. Markus noted that the record was in one respect less than optimal, he did not identity an ambiguity that the ALJ was obligated to resolve by developing the record. Indeed, the ALJ found that the record had developed after Dr. Markus's evaluation, and concluded that Plaintiff's lifting ability should be limited even more strictly than Dr. Markus recommended. AR 513.

### b. Rejection of Manipulation Limitations

Plaintiff next contends that the ALJ erred in rejecting Dr. Markus' opinion that Plaintiff should be limited to "occasionally" fingering and feeling small objects. The ALJ expressly rejected this finding, and found that Plaintiff could "frequently" finger and feel. AR 513. An ALJ may reject an opinion because it is inconsistent with the doctor's own objective findings and the record as a whole. *Phelps v. Berryhill*, 714 F. App'x 628, 630 (9th Cir. 2017); *see, e.g.*, *Batson*, 359 F.3d at 1195. The ALJ rejected Dr. Markus' manipulative limitation "in light of the largely unremarkable longitudinal medical history." AR 513. Although the ALJ did not refer to specific facts in Plaintiff's medical history, substantial evidence exists in the medical record to support the ALJ's decision. *See Warren v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (considering additional evidence supporting an ALJ's reasoning).

First, Dr. Markus' examination found that Plaintiff had "some difficulty manipulating small objects" but "[t]here [was] no evidence of diminution of function with repetition." AR 204. Later examinations reported that Plaintiff had "[n]ormal range of motion, muscle strength, and

stability in all extremities with no pain on inspection." AR 377, 383. Plaintiff's other physical

examinations in the record do not mention weakness or insensitivity in Plaintiff's hands.

*See* AR 368, 371, 377, 380, 383, 386. Finally, Dr. Freed administered a Fine Finger Movement

test, which showed only mild impairment in Plaintiff's right hand and average functioning on his

left. AR 477. These objective medical records provide substantial evidence to support the ALJ's

partial rejection of Dr. Markus' opined limitations.

### 4. Dr. Kessler

Plaintiff contends that the ALJ erred in relying, without substantial evidence, on the

opinion of Dr. Kessler to support a finding on non-disability. Plaintiff previously presented a

similar argument before the Court in his appeal of ALJ Bauer's decision. [*Mike S.*], 2015

WL 4994195, at *3-4. The Court's rejection of that argument applies equally here:

> Plaintiff does not cite any authority and the Court cannot find any
> authority to support the proposition that the ALJ is required to
> provide a specific justification for fully crediting the opinion of a
> medical or psychological expert. Accordingly, the Court will only
> find error in the ALJ's decision to fully credit Dr. Kessler's
> opinion if that opinion is not "relevant evidence that a reasonable
> mind might accept as adequate to support a conclusion."

*Id.* at *4 (quoting *Valentine*, 574 F.3d at 690). As the Court noted in [*Mike S.*], "Dr. Kessler

submitted his opinion after he performed a psychodiagnositic examination of Plaintiff during

which he conducted an extensive interview with Plaintiff and performed several psychological

tests. Dr. Kessler's opinion is detailed and thoroughly reasoned." *Id.* Accordingly, the opinion

was relevant evidence, and the ALJ did not err when he credited Dr. Kessler's opinion.

### 5. Deborah Johanson, LCSW

Plaintiff contends that the ALJ erred in failing to report what weight he gave to an Adult

Biopsychosocial Assessment/Annual Update ("Assessment") that Deborah Johanson, licensed

clinical social worker, compiled on November 16, 2012. AR 459 The Assessment consisted

primarily of symptom testimony from Plaintiff and his responses to a mental status examination, with no clear diagnoses or opinion on Plaintiff's limitations or functioning. AR 460-72. As such, Ms. Johanson's assessment was one of many pieces of medical evidence in the longitudinal record.

An ALJ need not discuss all evidence presented but must explain only why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ specifically discussed the Assessment along with other examination and treatment records. AR 510. Because Ms. Johanson ultimately offered no opinion regarding Plaintiff's functioning, limitations, or ability to perform tasks in the workplace, the ALJ had no obligation to reject the Assessment and did not err in failing to make such findings. *See, e.g.*, *Morales v. Colvin*, 534 F. App'x 589, 590 (9th Cir. 2013) (noting that "the ALJ did not reject the opinion of [the claimant's] treating physician. [The claimant's] treating physician did not provide an opinion on [the claimant's] limitations.").

Even assuming that the ALJ's failure to give a specific "weight" to the Assessment was an implied rejection, the ALJ would need to explain such a rejection only if the Assessment were significant probative evidence. As noted above, the Assessment comprises Plaintiff's subjective symptom testimony and the answers from a mental status exam, but it lacked accompanying interpretations, diagnoses, or opinions from Ms. Johanson. An ALJ would need to act improperly as a medical expert to supply such conclusions himself. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Molina v. Chater*, 110 F.3d 69 (9th Cir. 1997). Therefore, the ALJ could conclude little, if anything, definitive from the Assessment regarding Plaintiff's level of functioning or limitations, and the Assessment was not significant probative evidence. Thus,

even if ALJ implicitly rejected the Assessment, the ALJ was not required to explain his decision to do so.

**B. Step Five Findings**

At Step Five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). Plaintiff assigns several errors to the ALJ's step five findings, and appears to argue that (1) the ALJ erred procedurally in failing to inquire about conflicts between the DOT and the VE's testimony; (2) an actual conflict exists between the VE's testimony and the DOT; and (3) the ALJ posed an incomplete hypothetical to the VE.

**1. Conflict with the DOT**

At step five, an ALJ must identify and resolve apparent conflicts between the VE's testimony and the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). This requirement is based upon SSR 00-4p, which provides that, when a VE testifies concerning the requirements of a job or occupation, an ALJ has an "affirmative responsibility to ask about any possible conflict between" the VE's evidence and the information provided in the DOT. SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1152.

The ALJ's decision here notes that "[t]he vocational expert testified that any deviations from the information contained in the [DOT] were based on education, professional training, and experience." AR 516. No such testimony from the VE appears in the hearing transcript. *See* AR 557-71. Plaintiff argues, and the Commissioner concedes, that the administrative record

contains no evidence that the ALJ asked the VE about the existence of such conflicts. In light of *Massachi*, the ALJ's omission was a procedural error.

Having found error in the ALJ's decision, the Court must nonetheless determine whether the ALJ's error is harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885. The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

Plaintiff contends that the ALJ's error is harmful. Specifically, Plaintiff argues that the ALJ included functional limitations in Plaintiff's RFC that lack clear definitions in the DOT, but Plaintiff fails to show the existence of any actual or apparent conflict between Plaintiff's RFC and the DOT's listed requirements for the jobs identified at step five. The Court's own review shows only one actual conflict. Specifically, Plaintiff's RFC indicates that he can manage simple, routine, and learned tasks, AR 507, which indicates that Plaintiff could perform jobs requiring Specific Vocational Preparation (SVP) Level Two and Reasoning Level Two.[3] *See Zavalin*, 778 F.3d at 847. One of the jobs that the VE identified, "Document Preparer, Microfilming," requires Reasoning Level Three. DOT 249.587-018, 1991 WL 672349. This is a conflict, *Zavalin*, 778 F.3d at 847, and the ALJ erred in failing to inquire about and address the conflict.

---

[3] "Specific Vocational reparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, *Dictionary of Occupational Titles* App. C (4th ed. 1991). SVP Level Two consists of "[a]nything beyond short demonstration up to and including 1 month." *Id.* Reasoning Level Two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions . . . [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Returning to the harmless error analysis, the question becomes whether the ALJ's failure to ask about conflicts in the VE's testimony, combined the existence of an actual conflict relating to one of three identified occupations, rises to the level of harmful error. The court in *Massachi* noted that an ALJ's failure to ask the VE about conflicts may be harmless if there is no actual conflict between the VE's testimony and the DOT. *Massachi*, 486 F.3d at 1154 n.19. Put differently, the *Massachi* ALJ's failure to ask the VE about conflicts in the VE's testimony was inconsequential to the ultimate non-disability determination because there were no conflicts to uncover. The ALJ's error was similarly harmless here. Although there was an actual conflict with respect to one identified occupation, this error was inconsequential to the ultimate non-disability determination because the ALJ identified two other jobs at step five. *See, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) (finding that where VE identified two jobs and court upheld first identified job, the court did not need to address potential conflicts with the second job). Because the ALJ could have listed only two occupations at step five and still met his burden of production, conflicts between the requirements for a third job and the Plaintiff's RFC, and the ALJ's failure to ask about such conflict, were harmless errors.

### 2. Incorporation of Rejected Medical Evidence into the VE Hypothetical

Plaintiff also contends that the ALJ erred in posing an incomplete hypothetical to the VE at step five. A hypothetical posed to the VE must include "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (holding hypothetical must include all of plaintiff's limitations, but the record must support all assumptions in the hypothetical). The ALJ may properly omit non-credible

limitations from the hypothetical. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195-96).

Plaintiff does not specify what functional limitations were absent from the hypothetical, but refers generally to the functional limitations discussed earlier in Plaintiff's brief. The Court assumes that Plaintiff refers here to limitations that the ALJ rejected, and which Plaintiff argues were rejected in error, including Drs. Lundblad and Boyd's one-to-two-step limitation and Dr. Markus's limitation to occasional fine manipulation. Having already affirmed the ALJ's decision to reject these limitations, the Court similarly affirms the ALJ's decision to omit these limitations from the hypothetical posed to the VE.

## C. Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements

are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. The ALJ's decision was issued January 30, 2017, and is governed by SSR16-3p.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In the present case, the ALJ found first that Plaintiff's impairments could reasonably be expected to produce the symptoms that Plaintiff described. AR 508. Second, however, the ALJ determined that Plaintiff's subjective symptom testimony was inconsistent with medical evidence and other evidence in the record. *Id.* at 508-09. Plaintiff contends that the ALJ failed to make sufficiently specific findings to support this second determination.

The ALJ's decision reveals, however, that the ALJ provided several clear and convincing reasons partially to reject Plaintiff's testimony. First, the ALJ noted that Plaintiff's physical symptom testimony was not supported in the objective medical record, and similarly cited to psychological evaluations in the record that did not comport with Plaintiff's testimony regarding his mental limitations. *See, e.g.*, *Bray*, 554 F.3d at 1227 (using the same reason to discredit Plaintiff's testimony). Second, the ALJ observed that Plaintiff denied, in multiple examinations, the same symptoms that he described in his testimony before the ALJ. Under SSR 16-3p, a plaintiff's statements to medical providers are evidence that an ALJ can consider. Finally, the ALJ noted that Plaintiff treated his ailments with over-the-counter medication, did not seek significant treatment for his alleged right wrist pain, and had fair to poor compliance with physical therapy. *Molina*, 674 F.3d at 1113 ("[T]he ALJ may properly rely on unexplained

or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Together, these reasons justify the ALJ's decision to reject Plaintiff's testimony.

## D. Testimony of Plaintiff's Spouse

Finally, Plaintiff contends that the ALJ erred in rejecting the testimony of a lay witness, Plaintiff's wife. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* "If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d at 919. In rejecting lay witness testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Plaintiff's wife ("Mickey S.") testified in a third-party function report that Plaintiff performs hobbies around the house and attempts to help with household chores, child care, and pet care. AR 512. Mickey S. also testified that Plaintiff struggles to engage in these activities, is forgetful, spends time napping and watching television, and has difficulty remembering, completing tasks, concentrating, understanding, and following instructions.

The ALJ gave the testimony of Mickey S. "some weight." Viewing her statements in the context of the entire record, however, the ALJ found that Mickey S.'s testimony was not fully consistent with the medical evidence. This medical evidence suggested that Plaintiff's limitations were not as severe as Mickey S. testified. An ALJ may discount lay testimony that conflicts with medical evidence, and did so here. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). This was a germane reason to reject part of the testimony of Mickey S. Although the ALJ did not directly link specific medical evidence to his evaluation of Mickey S.'s testimony, her testimony was similar to Plaintiff's own testimony regarding his symptoms. Because the Court concluded that the ALJ provided clear and convincing reasons to reject Plaintiff's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" the testimony of Mickey S. *Valentine*, 574 F.3d at 694.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 18th day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge